UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL FORENSICS CORPORATION LLC, et al.<br><br>Defendants. | ) | CASE NO. 1:26 cv 02615<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>**THE DFC ENTITIES' ANSWER TO TO PLAINTIFF'S COMPLAINT** |

Defendants, Digital Forensics Corporation, LLC ("DFC"); 1st All File Data Recovery, LLC ("1st All Data"); 1st All File Recovery USA, Inc. ("1st All File"); I & D Belkin LLC ("I & D"); Remote Backup Corp, LLC ("Remote Backup"); Digital Cyber Forensics Investigations LLC ("Cyber Investigation"); and Cyber Digital Forensics Response LLC ("Cyber Response"); collectively the DFC Entities, for their Answer to the Complaint filed by the Federal Trade Commission (the "FTC"), states as follows:

1. In response to Paragraph 1, the DFC Entities admit that the FTC purports to bring this action under the Federal Trade Commission Act, the Telemarketing Sales Rule, and the FTC's Trade Regulation Rule on the Use of Consumer Reviews Testimonials. To the extent a response to Paragraph 1 is necessary, it is denied.

## SUMMARY OF THE CASE

2. The DFC Entities admit the allegations set forth in Paragraph 2 of the FTC's Complaint.

3. The DFC Entities admit the allegations set forth in Paragraph 3 of the FTC's Complaint.

4. The DFC Entities admit that some victims experience stress for fear that explicit material will be released, and further admit that some victims fear that the release will impact their personal lives, professional reputations, and/or relationships. Defendants deny the balance of the remaining allegations set forth in Paragraph 4 of the FTC's Complaint.

5. The DFC Entities admit that the FBI tracks sextortion schemes, that Congress enacted the "TAKE IT DOWN Act", and that the FTC purports to enforce compliance with these provisions, but deny all remaining allegations set forth in Paragraph 5 of the FTC's Complaint for want of knowledge.

6. The DFC Entities admit that some victims of sextortion attacks turn to the internet for help. Further answering, the Corporate Defendants state that law enforcement guidance and other free resources often do not address the urgency of a victim's situation. The DFC Entities deny all remaining allegations set forth in Paragraph 6 of the FTC's Complaint.

7. The DFC Entities deny the allegations set forth in Paragraph 7 of the FTC's Complaint. Further answering, DFC Entities do not exploit victim's individual pain points to escalate distress or compel immediate purchase of their services. In fact, DFC Entities follow procedures to ensure that distressed victims inquiring into DFC Entities' services are not under distress when engaging services. These procedures include a Voice Authorization conducted by a sales associate that reviews the services contract prior to commencing any purchase service.

8. The DFC Entities admit that DFC offers Phase 1 sextortion assistance services costing between $1,499 and $20,000. These prices are proportionate to the services offered, and DFC Entities endeavor to provide clients concomitant value. The DFC Entities further admit that

Phase I services include stopping the sextortion attack, taking over communication with the sextortionist, tracing the sextortionist's location through a tracking campaign, producing a detailed investigative report, and sending a cease-and-desist letter to the sextortionist. The DFC Entities deny the remaining allegations set forth in Paragraph 7 of the Plaintiff's Complaint.

9. The DFC Entities deny the allegations set forth in Paragraph 9 of the FTC's Complaint.

10. The DFC Entities deny the allegations set forth in Paragraph 10 of the FTC's Complaint.

11. The DFC Entities deny the allegations set forth in Paragraph 11 of the FTC's Complaint.

12. The DFC Entities deny the allegations set forth in Paragraph 12 of the FTC's Complaint.

13. The DFC Entities deny the allegations set forth in Paragraph 13 of the FTC's Complaint.

14. The DFC Entities admit that the FTC purports to bring this action but deny all remaining allegations set forth in Paragraph 14 of the FTC's Complaint.

## JURISDICTION AND VENUE

15. The DFC Entities deny the allegations set forth in Paragraph 15 of the FTC's Complaint.

16. The DFC Entities admit the allegations set forth in Paragraph 16 of the FTC's Complaint.

## PLAINTIFF

17. The DFC Entities admit that the FTC purports to commence this action through the FTC Act and to enforce the FTC Act, the Telemarketing Act, the GLB Act, and the Reviews and Testimonials Rule. The FTC denies the balance of the remaining the allegations set forth in Paragraph 17 of the FTC's Complaint.

## DEFENDANT

18. The DFC Entities admit the allegations set forth in Paragraph 18 of the FTC's Complaint.

19. The DFC Entities deny the allegations set forth in Paragraph 19 of the FTC's Complaint. Further answering, 1st All Data Recovery is headquartered at 4400 Renaissance Parkway, Unit 1, Warrensville Heights, OH 44128.

20. The DFC Entities admit the allegations set forth in Paragraph 20 of the FTC's Complaint.

21. The DFC Entities deny the allegations set forth in Paragraph 21 of the FTC's Complaint. Further answering, I & D Belkin is located at 4400 Renaissance Parkway, Unit 1, Warrensville Heights, OH 44128.

22. The DFC Entities admit the allegations set forth in Paragraph 22 of the FTC's Complaint.

23. The DFC Entities admit the allegations set forth in Paragraph 23 of the FTC's Complaint.

24. The DFC Entities admit the allegations set forth in Paragraph 24 of the FTC's Complaint. Further answering, DFC, 1st All Data Recovery, 1st All File Recovery, I & D Belkin,

Remote Backup Corp., Cyber Investigation, and Cyber Digital (collectively, the "DFC Entities") all offer sextortion-assistance services.

25. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 25 of the FTC's Complaint and therefore deny the same. Further answering, 1st All Investments, LLC is a real-estate holding company that is unrelated to DFC's sextortionist assistance business.

26. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 26 of the FTC's Complaint and therefore deny the same. Further answering, Salon Place, LLC is a commercial salon-suite leasing business that is unrelated to DFC's sextortionist assistance business.

27. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 27 of the FTC's Complaint and therefore deny the same Further answering, VPR Academy LLC is a Russian language and culture school that is unrelated to DFC's sextortionist assistance business.

28. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 25 of the FTC's Complaint and therefore deny the same. Further answering, 21111 Chagrin Investments, LLC is a real-estate holding company that is unrelated to DFC's sextortionist assistance business.

29. The DFC Entities admit the allegations set forth in Paragraph 29 of the Plaintiff's Complaint. 4350 Renaissance is a real-estate holding company that is unrelated to DFC's sextortionist assistance business. Further answering, 1st All Investment, Salon Place, VPR Academy, 21111 Chagrin, and 4350 Renaissance (collectively, the "Unrelated Entities") are

unrelated to DFC's sextortionist assistance business, outside from common ownership and/or manage, and do not provide any such sextortionist- assistance services.

30. The registered agent for 1st All Data File Recovery is Evgeni Gudimov. The DFC Entities lack sufficient knowledge and information to admit the allegations pertaining to the Unrelated Entities and therefore deny the same. The DFC Entities admit the remaining allegations set forth in Paragraph 30 of the FTC's Complaint.

31. The DFC Entities deny the allegations set forth in Paragraph 31 of the FTC's Complaint.

32. The DFC Entities deny the allegations set forth in Paragraph 32 of the FTC's Complaint.

**COMMON ENTERPISE**

33. The DFC Entities deny the allegations set forth in Paragraph 33 of the FTC's Complaint.

34. The DFC Entities deny the allegations set forth in Paragraph 34 of the FTC's Complaint.

35. The DFC Entities deny the allegations set forth in Paragraph 35 of the FTC's Complaint for want of knowledge.

36. The DFC Entities admit allegations set forth in Paragraph 36 of the FTC's Complaint. Further answering, the addresses stated in the Complaint were outdated and had not been updated at the time the Complaint was filed.

37. The DFC Entities admit the allegations set forth in Paragraph 37 of the FTC's Complaint.

38. The DFC Entities deny the allegations set forth in Paragraph 38 of the FTC's Complaint. Further answering, the DFC Entities were commonly managed. Transactions made in the name of any DFC Entity were for company purposes.

39. The DFC Entities admit the allegations set forth in Paragraph 39 of the FTC's Complaint.

**DEFENDANTS' BUSINESS ACTIVITIES**

40. The DFC Entities deny the allegations set forth in Paragraph 40 of the Plaintiff's Complaint.

**Defendants' Predatory Sextortion Assistance Services**

41. The DFC entities admit that they operate multiple websites such as those identified in Paragraph 41 of the Complaint but deny all allegations set forth in Paragraph 41 of the Plaintiff's Complaint.

42. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 42 of the FTC's Complaint and therefore deny the same.

43. The DFC Entities admit that they advertise as capable of offering assistance to stop sextortion attacks. The DFC Entities lack sufficient knowledge and information to admit or deny the remaining allegations set forth in Paragraph 43 of the FTC's Complaint and therefore deny the same.

44. No response is necessary to Figure 2 of the FTC's Complaint because Figure 2 speaks for itself. To the extent a response is necessary, the DFC Entities admit that they have experience providing digital forensic services and that Figure 2 depicts laboratory space in their

former office. The DFC Entities deny all remaining allegations set forth in Paragraph 44 of the FTC's Complaint.

45. The DFC Entities admit the allegations set forth in Paragraph 45 of the FTC's Complaint.

46. The DFC Entities admit that they advise victims not to pay perpetrators and that they can assist in combatting the sextortion. The DFC Entities all remaining allegations set forth in Paragraph 46 of the FTC's Complaint

47. The FTC Defendants admit the allegations in Paragraph 47 of the Complaint. Further answering, the FTC Defendants state that Figure 3 of the FTC's Complaint speaks for itself.

48. The DFC Entities admit the allegations set forth in Paragraph 48 of the FTC's Complaint. Further answering, however, the DFC Entities can not guarantee any specific outcome and inform sextortion victims accordingly.

49. The DFC Entities admit that the consequences of a sextortion attack can be severe. The DFC entities deny that they use "scare tactics" against sextortion victims and deny all remaining allegations set forth in Paragraph 49 of the FTC's Complaint.

50. The DFC Entities admit that they can help victims of a sextortion attack. The DFC Entities further admit that the legal system and law enforcement are often unable to address sextortion with immediacy requested or desired by victims. The DFC Entities also admit that paying a fee to perpetrators of sextortion will generally not make them stop their criminal activities. Further answering, the DFC Entities admit that Figure 5 is outdated and was no longer on its website at the time the Complaint was filed. The DFC Entities deny all remaining allegations set forth in Paragraph 50 of the FTC's Complaint.

51. The DFC Entities admit that time is of the essence when a victim is confronted with a sextortion attack, but deny all remaining allegations in Paragraph 51 of the Complaint. Further answering, Figure 6 of the FTC's Complaint speaks for itself.

52. The DFC Entities admit that victims are encouraged to fill out a form to provide information on their situation. The DFC Entities further admit that they try to contact victims as soon as possible after the forms are submitted. The DFC Entities deny all remaining allegations set forth in Paragraph 52 of the FTC's Complaint.

53. The DFC Entities admit that its sales associates use a telemarketing script when communicating with potential customers. The DFC Entities deny all remaining allegations set forth in Paragraph 53 of the FTC's Complaint. Further answering, sales associates are advised to inform customers of potential "pain points" that a sextortionist may use against them. These "pain points" were identified by DFC through its experience with victims, analysts, and sextortionists.

54. The DFC Entities admit that sextortionists often try to employ maximum leverage against victims, including threatening to and actually altering photos to place victims in compromising positions and exacerbate the embarrassment other negative consequences for victims. The DFC Entities deny all remaining allegations in Paragraph 54 of the Complaint. Further answering, the DFC Entities state that Figure 7 of the Complaint speaks for itself.

55. The DFC Entities deny the allegations set forth in Paragraph 55 of the FTC's Complaint. Further answering, the relevant sales associate is instructed to inform consumers that the sextortionist could send altered photos to the police, the victim's employer, or the victim's friends or family. This assertion is supported by DFC's experience with thousands of communications between analysts, victims, and sextortionists.

56. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 56 of the FTC's Complaint and therefore deny the same.

57. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 57 of the FTC's Complaint and therefore deny the same.

58. The DFC Entities admit that their sales script instructs employees to gather personal details from potential customers. The DFC Entities deny the remaining allegations set forth in Paragraph 58 of the FTC's Complaint. Further answering, the scripts were designed to collect potentially compromising information about the customer that a sextortionist may use to exploit the customer so that DFC analysts have all relevant information during their investigation.

59. The DFC Entities admit that the sales script instructs employees to gather personal details from potential customers, such as pending divorces. The DFC Entities deny the remaining allegations set forth in Paragraph 59 of the FTC's Complaint. Further answering, the scripts were designed to collect potentially compromising information about the customer that a sextortionist may use to exploit the customer so that DFC analysts have all relevant information during their investigation.

60. The DFC Entities admit that the sales script instructs employees to gather personal details from potential customers, such as their careers and military status. The DFC entities deny the remaining allegations set forth in Paragraph 60 of the FTC's Complain. Further answering, the scripts were designed to collect potentially compromising information about the customer that a sextortionist may use to exploit the customer so that DFC analysts have all relevant information during their investigation. t.

61. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 61 of the FTC's Complaint and therefore deny the same. Further answering, DFC Entities do not use details of victim's sextortion attack to place or exacerbate direct pressure on the victim in favor of DFC Entities. Rather, DFC Entities use these details to further inform the victim on actual or potential strategies to coerce payment.

62. The DFC Entities deny the allegations set forth in Paragraph 62 of the FTC's Complaint. Further answering, based on DFC's experience, DFC recommends that, if the customer retains DFC for its sextortionist-assistance services, the customer does not block the sextortionist, and instead uses DFC's system.

63. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 63 of the FTC's Complaint and therefore deny the same Further answering, DFC Entities recommend, once a victim purchases Phase I services, not to block or ignore the sextortionist and instead allow DFC analysts to take over communication with the sextortionist. Sales associates are instructed to fully inform victims of sextortionist's actual or potential strategies to coerce payment.

64. The DFC Entities deny the allegations set forth in Paragraph 64 of the FTC's Complaint. Further answering, sales associates' performances are routinely evaluated to ensure quality control and compliance with all applicable laws, as well as DFC standards and policies.

65. The DFC Entities admit that their sales associate should and do inform the potential customer of Phase I and Phase II services. Further answering, the goal of Phase I is to ensure that the sextortionist cease sextortion of the customer. The DFC Entities deny the remaining allegations set forth in Paragraph 65 of the FTC's Complaint.

66. The DFC Entities admit that Phase I is designed to put an end to the sextortion attack, but deny all remaining allegations set forth in Paragraph 66 of the FTC's Complaint.

67. The DFC Entities admit the allegations set forth in Paragraph 67 of the FTC's Complaint. Further answering, Phase II operates additional protection against subsequent sextortion attacks after Phase I is completed and is not recommended in every case.

68. The DFC Entities admit that they perform the services listed in Paragraph 68 of the FTC's Complaint but do not guarantee any specific outcome and deny the remaining allegations therein. For instance, in cases where a sextortionist is not identified or located, DFC analysts are unable to report the sextortionist to local police.

69. The DFC Entities admit the allegations set forth in Paragraph 69 of the FTC's Complaint. Further answering, these prices are proportionate to the services DFC Entities offer, and provide.

70. The DFC Entities deny the allegations set forth in Paragraph 70 of the FTC's Complaint. Further answering, DFC Entities do not set a "default" recommendation.

71. The DFC Entities admit that either during the initial sales call or immediately thereafter, the customer is asked for payment information. The DFC Entities deny all remaining allegations set forth in Paragraph 71 of the FTC's Complaint.

72. The DFC Entities admit that payment information is obtained either before or after the service contracts to customers are sent for review and signature.

**<u>Defendants' Failure to Provide the Promised Sextortion Assistance Services</u>**

***Defendants Often Do Not Perform the Phase I Services***

73. The DFC Entities deny the allegations set forth in Paragraph 73 of the FTC's Complaint.

74. The DFC Entities deny the allegations set forth in Paragraph 74 of the FTC's Complaint.

75. The DFC Entities deny the allegations set forth in Paragraph 75 of the FTC's Complaint. Further answering, DFC analysts are not trained or instructed to block sextortionists. Rather, they are trained and instructed to engage in communication such that the sextortionists' location and identity may be obtained.

76. The DFC Entities deny the allegations set forth in Paragraph 76 of the FTC's Complaint. Further answering, DFC analysts are not trained or instructed to block the sextortionists. Customers are advised to remain logged out of their accounts during this process. Customers who ignore that advice often experience less favorable results.

77. The DFC Entities deny the allegations set forth in Paragraph 77 of the FTC's Complaint. Further answering, it is against DFC policy to fabricate conversations between an analyst and a sextortionist. Any analyst that does so violates DFC policies, standards, and procedures.

78. The DFC Entities deny the allegations set forth in Paragraph 78 of the FTC's Complaint. Further answering, any analyst that copies and pastes screenshots of fake or doctored conversations into a Phase I report violates DFC policies, standards, and procedures.

79. The DFC Entities admit that a manager reviews every report before it is provided to the customer. The DFC Entities deny all remaining allegations set forth in Paragraph 79 of the FTC's Complaint. Further answering, any analyst that alters or photoshops the contents of messages exchanged with sextortionists and sharing those doctored conversations with customers violates DFC policies, standards, and procedures. DFC employees are not instructed to delete the

entire chat log from the customer's communications platform accounts, and if any employee does so they would violate DFC policies, standards, and procedures.

80. The DFC Entities admit that, during Phase I, DFC analysts send a tracking link to identify and locate the sextortionist and then send the sextortionist a cease-and-desist letter to pressure the sextortionist into stopping their attack. The DFC Entities deny all remaining allegations set forth in Paragraph 80 of the FTC's Complaint. Further answering, in cases where the sextortionist does not click on the tracking link, DFC analysts are trained in different methods to continue their investigation.

81. The DFC Entities admit that DFC analysts include results of the tracking campaign in an accurate Phase I report. The DFC Entities deny all remaining allegations set forth in Paragraph 81 of the FTC's Complaint.

82. The DFC Entities deny the allegations set forth in Paragraph 82 of the FTC's Complaint. Further answering, any employee that creates a fake tracking link or link results violates DFC policies, standards, and procedures.

83. The DFC Entities deny the allegations set forth in Paragraph 83 of the FTC's Complaint. Further answering, DFC Entities are not aware of any employee that fabricates or reuses latitude or longitude coordinates for areas where sextortionists are known or believed to be commonly located, and any employee that does so would violate DFC policies, standards, and procedures.

84. The DFC Entities deny the allegations set forth in Paragraph 84 of the FTC's Complaint. Further answering, the services contract executed by the customer makes clear that Phase I is not designed to serve as a full forensics investigation. Phase I services help inform the customer to determine whether Phase II is necessary, which includes contacting local law

enforcement. Sales associates are trained and instructed to fully inform the customer of the different services offered in Phase I and Phase II.

85. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 85 of the FTC's Complaint and therefore deny the same. Further answering, sales associates, analysts, and other customer-facing employees are trained and instructed to ensure that customers understand the different services offered in Phase I and Phase II.

86. The DFC Entities deny the allegations set forth in Paragraph 86 of the FTC's Complaint.

***Defendants Pressure Customers to Purchase Phase 2 Services***

87. The DFC Entities deny the allegations set forth in Paragraph 87 of the FTC's Complaint. Further answering, Phase II operates as a supplemental protection against subsequent sextortion attacks and is not recommended for every case.

88. The DFC Entities deny the remaining allegations set forth in Paragraph 88 of the FTC's Complaint. Further answering, DFC Entities do not recommend Phase II services to every customer, or pressure customers into purchasing Phase II services.

89. The DFC Entities admit that Phase 2 services include contacting local law enforcement where the sextortionist is found and monitoring the victim's accounts in case the sextortionist renews the attack. The DFC Entities deny the remaining allegations set forth in Paragraph 89 of the FTC's Complaint. Further answering, DFC Entities use legal sales techniques and practices to sell their services when it is appropriate to a specific customer's case, and do not instruct employees to "harass" customers into purchasing Phase II services.

90. The DFC Entities deny the allegations set forth in Paragraph 90 of the FTC's Complaint. Further answering, the Phase II sales pitch uses lawful sales techniques and practices, and it is not designed to convince clients that a sextortionist will likely return and resume the sextortion attack if that is not true for a specific client.

91. The DFC Entities deny the allegations set forth in Paragraph 91 of the FTC's Complaint for want of knowledge.

92. The DFC Entities deny the allegations set forth in Paragraph 92 of the FTC's Complaint for want of knowledge.

93. No response is necessary to Figure 9 of FTC's Complaint as Figure 9 speaks for itself. To the extent a response is necessary, the DFC Entities deny the allegations set forth in Paragraph 93 of FTC's Complaint. Further answering, the language contained in Figure 9 is only used if the sextortionist does not click on the tracking link that captures the sextortionist's IP address that may lead to their identity and/or if it is the DFC analyst's recommendation that Phase II is appropriate for that customer.

94. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 94 of the FTC's Complaint and therefore deny the same. Further answering, Phase II services are only recommended if it is appropriate for a specific customer's case.

***Defendants Do Not Actually Provide the Promised Phase 2 Services***

95. The DFC Entities deny the allegations set forth in Paragraph 95 of the FTC's Complaint. Further answering, Phase II prices are proportionate to the services DFC Entities offer. DFC Entities are not aware of any analyst that does not provide the promised services, and

any employee that fails to provide such services would violate DFC policies, standards, and procedures.

96. The DFC Entities deny the allegations set forth in Paragraph 96 of the FTC's Complaint. Further answering, DFC Entities is not aware of any employees that do not contact local law enforcement to report the sextortionists, and any employee that fails to contact local law enforcement when that service has been contracted for would violate DFC policies, standards, and procedures.

97. The DFC Entities deny the allegations set forth in Paragraph 97 of the FTC's Complaint. Further answering, the goal of DFC services is not to secure an arrest of a sextortionist. Rather, the primary goal is to make the sextortionist stop their attacks against the customer. It is DFC's experience that contacting local law enforcement stops the sextortionist from proceeding with their attacks.

98. The DFC Entities deny the allegations set forth in Paragraph 98 of the FTC's Complaint. Further answering, the DFC Entities are not aware of any employees that do not monitor customer accounts, and any employees that do not monitor customer accounts when such services have been contracted for would violate DFC's policies, standards, and procedures.

99. The DFC Entities deny the allegations set forth in Paragraph 99 of the FTC's Complaint. Further answering, the primary goals of DFC services, as expressly communicated to the clients, is stop sextortionist's attacks and prevent dissemination of the explicit material. DFC Entities admit a high success rate in achieving that goal.

100. The DFC Entities deny the allegations set forth in Paragraph 100 of the FTC's Complaint. Further answering, Phase II was developed as supplemental protection for customers

if a sextortionist does indeed re-engage their attacks. While DFC Entities are successful in many cases in preventing dissemination, not all cases are successful.

101. The DFC Entities deny the allegations set forth in Paragraph 101 of the FTC's Complaint. Further answering, Phase II was developed as supplemental protection for customers if a sextortionist does indeed re-engage their attacks. While DFC Entities are successful in most cases in preventing dissemination, not all cases are successful.

102. The DFC Entities denies the allegations set forth in Paragraph 102 of the FTC's Complaint. Further answering, DFC services have produced a high success rate. Based on the cases available to them since the Receiver took control of the relevant records, 93.2% reported no known dissemination at the time of the post-service call. The DFC Entities deny the remaining allegations set forth in Paragraph 102 of the FTC's Complaint.

**Defendants Often Refuse to Honor Their Refund Policy**

103. The DFC Entities deny the allegations set forth in Paragraph 103 of the FTC's Complaint. Further answering, the excerpted refund policy contained in Paragraph 103 is outdated and was no longer used at the time this Complaint was filed.

104. The DFC entities deny the allegations set forth in Paragraph 104 of the FTC's Complaint. Further answering, it is DFC Entities' policy is to communicate, in good faith, with a customer requesting a refund. DFC Entities is not aware of any employee that did ignore a customer who requested a refund, and any employees that do so would violate DFC policies, standards, and procedures.

105. The DFC Entities deny the allegations set forth in Paragraph 105 of the FTC's Complaint. Further answering, it is not DFC Entities' policy for its customer-facing employees

to instruct customers to not contact them for a specified period such that they no longer qualify for a refund.

106. The DFC Entities deny the allegations set forth in Paragraph 106 of the FTC's Complaint. Further answering, DFC Entities do not condition a refund on the execution of a non-disparagement agreement or a promise to take down any negative reviews on online platforms, although such options may have been appropriate under certain specific circumstances.

**Defendants Unlawfully Suppress Negative Reviews and Disseminate Fake Positive Reviews**

107. The DFC Entities deny the allegations set forth in Paragraph 107 of the FTC's Complaint. Further answering, upon information and belief, many of the reviews posted on the Better Business Bureau (the "BBB") website were written by sextortionists.

108. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 108 of the FTC's Complaint and therefore deny the same. Further answering, DFC Entities do not pressure customers into buying their services. In fact, DFC Entities implement multiple procedures, such as separate Voice Authorization, to ensure that customers do not retain DFC while feeling pressure or undue duress.

109. The DFC Entities admit the allegations set forth in Paragraph 109 of the FTC's Complaint. Further answering, contact with the BBB has been focused on improving the DFC Entities' services and business practices, such that BBB lifts the alerts on the DFC Entities' BBB profile.

110. The DFC Entities admit the allegations set forth in Paragraph 110 of the FTC's Complaint. Further answering, upon information and belief, many of the reviews posted on the BBB were written by the sextortionists themselves.

111. The DFC Entities deny the allegations set forth in Paragraph 111 of the FTC's Complaint. Further answering, DFC Entities contact customers to address and remediate, not to suppress, their complaints.

112. The DFC Entities deny the allegations set forth in Paragraph 112 of the FTC Complaint. DFC Entities is not aware of any employees that create and send links to a fake BBB website, and if any employee does so, that would violate DFC standards, practices, and procedures.

113. The DFC Entities deny the allegations set forth in Paragraph 113 of the FTC's Complaint. Further answering, DFC Entities are not aware of any employee that refuses to provide a refund unless they sign a Release and Settlement Agreement and remove any negative review posted, and any employee that does so would violate the DFC's practices, policies, and procedures.

114. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 114 of the FTC's Complaint and therefore deny the same.

***Defendants Generate and Disseminate Fake Positive Reviews***

115. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 115 of the FTC's Complaint and therefore deny the same. Further answering, DFC Entities is not aware of any employees that have posted fake positive reviews on Google, and any employee that does so would violate DFC policies, standards, and procedures.

116. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 116 of the FTC's Complaint and therefore deny the same.

Further answering, DFC Entities utilized Uber drivers as a courier service apart from any sextortionist-assistance services.

117. The DFC Entities deny the allegation set forth in Paragraph 117 of the FTC's Complaint. Further answering, DFC Entities do not use Uber drivers to authenticate and publicize fake reviews on Google.

118. The DFC Entities deny the allegations set forth in Paragraph 118 of the FTC's Complaint. Further answering, DFC Entities pay Uber drivers for courier services as described in Paragraph 116 of this Answer.

119. The DFC Entities deny the allegations set forth in Paragraph 119 of the FTC's Complaint.

120. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 120 of the FTC's Complaint and therefore deny the same.

121. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 121 of the FTC's Complaint and therefore deny the same.

122. The DFC Entities admit that the conversations with the BBB were focused on improving DFC Entities' services and business practices in an effort to satisfy BBB's concerns. These conversations were not an effort to remove or suppress true, unfavorable reviews. The DFC Entities deny all remaining allegations set forth in Paragraph 122 of the FTC's Complaint.

123. The DFC Entities admit that Figure 10 represents internal reviews submitted by customers that are not publicized on public reviewing platforms. Further answering, DFC Entities developed their own internal review process, so there is a way to obtain client reviews without publicizing the client's personal experiences.

124. The DFC Entities deny the allegations set forth in Paragraph 124 of the FTC's Complaint. Further answering, DFC Entities is not aware of any employee who is creating and posting fake reviews, and any employee who does so would violate DFC practices, standards, and procedures.

125. The DFC Entities deny the allegations set forth in Paragraph 125 of the FTC's Complaint. Further answering, DFC Entities do not require customers to submit a positive BBB review as a condition to receive purchased services.

126. The DFC Entities deny the allegations set forth in Paragraph 126 of the FTC's Complaint.

## VIOLATIONS OF THE FTC ACT

127. With regard to the allegations contained in Paragraph 127 of the FTC's Complaint, the cited legal provision speaks for itself, and the DFC Entities deny any characterization thereof.

128. Paragraph 128 of the FTC's Complaint states a legal conclusion as to which no response is required. To the extent that a response is required, the DFC Entities deny the allegations contained in Paragraph 128 of the Complaint.

129. Paragraph 129 of the FTC's Complaint states a legal conclusion as to which no response is required. To the extent that a response is required, the DFC Entities deny the allegations contained in Paragraph 129 of the Complaint.

## COUNT I
### Misrepresentations Regarding Credit Repair Services

130. The DFC Entities deny the allegations set forth in Paragraph 130 of the FTC's Complaint.

131. The DFC Entities deny the allegations set forth in Paragraph 131 of the FTC's Complaint.

132. The DFC Entities deny the allegations set forth in Paragraph 132 of the FTC's Complaint.

**COUNT II**
**Deceptive Consumer Reviews**

133. The DFC Entities deny the allegations set forth in Paragraph 133 of the FTC's Complaint.

134. The DFC Entities deny the allegations set forth in Paragraph 134 of the FTC's Complaint.

135. The DFC Entities deny the allegations set forth in Paragraph 135 of the FTC's Complaint.

**VIOLATIONS OF THE TELEMARKETING SALES RULE**

136. With regard to the allegations contained in Paragraph 136 of the FTC's Complaint, The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 136 of the FTC's Complaint and therefore deny the same.

137. With regard to the allegations contained in Paragraph 137 of the FTC's Complaint, provisions of the Telemarking Sales Rule speak for themselves, and the DFC Entities deny any characterization thereof.

138. With regard to the allegations contained in Paragraph 138 of the FTC's Complaint, provisions of the Telemarking Sales Rule speak for themselves, and the DFC Entities deny any characterization thereof.

139. With regard to the allegations contained in Paragraph 139 of the FTC's Complaint, provisions of the Telemarking Sales Rule speak for themselves, and the DFC Entities deny any characterization thereof.

**COUNT III**
**Deceptive Telemarketing Calls in Violation of the TSR**

140. The DFC Entities deny the allegations set forth in Paragraph 140 of the FTC's Complaint.

141. The DFC Entities deny the allegations set forth in Paragraph 141 of the FTC's Complaint.

**VIOLATIONS OF THE GRAMM-LEACH-BILLEY ACT**

142. With regard to the allegations contained in Paragraph 142 of the FTC's Complaint, provisions of Gramm-Leach-Billey Act speak for themselves, and the DFC Entities deny any characterization thereof.

143. With regard to the allegations contained in Paragraph 143 of the FTC's Complaint, provisions of Gramm-Leach-Billey Act speak for themselves, and the DFC Entities deny any characterization thereof.

144. With regard to the allegations contained in Paragraph 144 of the FTC's Complaint, provisions of Gramm-Leach-Billey Act speak for themselves, and the DFC Entities deny any characterization thereof.

145. With regard to the allegations contained in Paragraph 145 of the FTC's Complaint, provisions of Gramm-Leach-Billey Act speak for themselves, and the DFC Entities deny any characterization thereof.

**COUNT IV**

**Use of False, Fictitious, or Fraudulent Statements to Obtain or Attempt to Obtain, or Cause to be Disclosed or Attempt to be Disclosed, Customer Information of a Financial Institution**

146. The DFC Entities deny the allegations set forth in Paragraph 146 of the FTC's Complaint.

147. The DFC Entities deny the allegations set forth in Paragraph 147 of the FTC's Complaint.

**VIOLATIONS OF THE REVIEWS AND TESTIMONIALS RULE**

148. The DFC Entities lack sufficient knowledge and information to admit or deny the allegations set forth in Paragraph 148 of the FTC's Complaint and therefore deny the same.

149. With regard to the allegations contained in Paragraph 149 of the FTC's Complaint, provisions of Reviews and Testimonials Rule speak for themselves, and the DFC Entities deny any characterization thereof.

150. With regard to the allegations contained in Paragraph 150 of the FTC's Complaint, provisions of Reviews and Testimonials Rule speak for themselves, and the DFC Entities deny any characterization thereof.

151. With regard to the allegations contained in Paragraph 151 of the FTC's Complaint, provisions of Reviews and Testimonials Rule speak for themselves, and the DFC Entities deny any characterization thereof.

152. With regard to the allegations contained in Paragraph 152 of the FTC's Complaint, provisions of Reviews and Testimonials Rule speak for themselves, and the DFC Entities deny any characterization thereof.

153. With regard to the allegations contained in Paragraph 153 of the FTC's Complaint, provisions of Reviews and Testimonials Rule speak for themselves, and the DFC Entities deny any characterization thereof.

154. With regard to the allegations contained in Paragraph 154 of the FTC's Complaint, provisions of Reviews and Testimonials Rule speak for themselves, and the DFC Entities deny any characterization thereof.

155. With regard to the allegations contained in Paragraph 155 of the FTC's Complaint, provisions of Reviews and Testimonials Rule speak for themselves, and the DFC Entities deny any characterization thereof.

## COUNT V
## Writing or Creating Fake or False Consumer Reviews and Testimonials

156. The DFC Entities deny the allegations set forth in Paragraph 156 of the FTC's Complaint.

157. The DFC Entities deny the allegations set forth in Paragraph 157 of the FTC's Complaint.

## COUNT VI
## Purchasing Fake or False Consumer Reviews

158. The DFC Entities deny the allegations set forth in Paragraph 158 of the FTC's Complaint.

159. The DFC Entities deny the allegations set forth in Paragraph 159 of the FTC's Complaint.

## CONSUMER INJURY

160. The DFC Entities deny the allegations set forth in Paragraph 160 of the FTC's Complaint

## AFFIRMATIVE DEFENSES

161. FTC's claims are barred, in whole or in part, on the ground that, without admitting that any violations of any law, some or all of the allegedly violative statements alleged

in the Complaint, if such statements were made, were not false or misleading statements of material fact, but were good faith sales practices.

162. FTC's claims fail to state a claim upon which relief can be granted, in whole or in part, under the Federal Trade Commission Act, the Telemarketing Sales Rule, the Gramm-Leach-Bliley Act, and the Trade Regulation Rule on the Use of Consumer Reviews and Testimonials.

163. FTC's claims fail, in whole or in part, for improper jurisdiction and/or venue.

164. FTC's claims fail, in whole or in part, for failure to join a necessary party or parties.

165. Any injury or harm to any individual consumer or to the public in general alleged by the FTC in the Complaint was caused by acts or omissions of a third-party over which DFC Entities had no authority or control.

166. FTC's claims are barred, in whole or in part, by the fact that any conduct of the DFC Entities was a remote cause of any injury or harm to any individual consumer or to the public in general.

167. FTC's claims are barred, in whole or in part, under the applicable statutes of limitations.

168. FTC's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

169. DFC Entities reserves the right to assert an additional affirmative defense it may learn of during the course of discovery in this proceeding.

**WHEREFORE,** having answered, the DFC Entities respectfully request that this Court:

(a) Enter judgment in its favor and dismiss the FTC's Complaint, with prejudice;

(b) Award the DFC Entities their costs, expenses, and reasonably attorneys' fees; and

(c) Award such other and further relief as this Court deems just and equitable.

McCARTHY, LEBIT, CRYSTAL
& LIFFMAN CO., LPA

*/s/ David M. Cuppage*
Robert T. Glickman (0059579)
George H. Carr (0069372)
Taylor S. Mehalko (0103772)
David M. Cuppage (0047104)
1111 Superior Avenue, Suite 2700
Cleveland, Ohio 44115
(216) 696-1422
(216) 696-1210 (facsimile)
rtg@mccarthylebit.com
ghc@mccarthylebit.com
tsm@mccarthylebit.com
dmc@mccarthylebit.com

*Attorneys for DFC Entities*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, a copy of the foregoing was filed electronically. Parties may access this filing through the Court's system.

*/s/ David M. Cuppage*
David M. Cuppage